**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**NORTHERN DIVISION**

**DEBRA MATTHEWS**                                                                    **PLAINTIFF**

**V.**                              **CASE NO. 1:18-CV-90-BSM-BD**

**ANDREW SAUL, Commissioner**
**Social Security Administration[1]**                                         **DEFENDANT**

## RECOMMENDED DISPOSITION

This Recommended Disposition (Recommendation) has been sent to Judge Brian S.

Miller. Either party may file written objections to this Recommendation. If objections are

filed, they should be specific and should include the factual or legal basis for the

objection.

To be considered, objections must be received in the office of the Court Clerk

within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt

this Recommendation without independently reviewing the record. By not objecting,

parties may also waive the right to appeal questions of fact.

## I.   Introduction:

On November 1, 2016, Debra Matthews applied for disability benefits, alleging

disability beginning October 1, 2016. (Tr. at 15) Her claims were denied both initially

and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge

(ALJ) denied Dr. Matthews's application. (Tr. at 26) She requested that the Appeals

---

[1] On June 6, 2019, the United States Senate confirmed Mr. Saul's nomination to lead the
Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), Mr. Saul is
automatically substituted as the Defendant.

Council review the ALJ's decision, but that request was denied. (Tr. at 1) Therefore, the ALJ's decision now stands as the final decision of the Commissioner. Dr. Matthews filed this case seeking judicial review of the decision denying her benefits.

For the reasons explained below, the Commissioner's decision should be reversed and remanded for further review.

## II. <u>The Commissioner's Decision</u>:

The ALJ found that Dr. Matthews had not engaged in substantial gainful activity since the alleged onset date of October 1, 2016. (Tr. at 17) At step two of the five-step analysis, the ALJ found that Dr. Matthews had the following severe impairments: spine disorders, fracture of bones, and carpal tunnel syndrome. (Tr. at 18)

After finding that Dr. Matthews's impairments did not meet or equal a listed impairment (Tr. at 19), the ALJ determined that Dr. Matthews had the residual functional capacity (RFC) to perform work at the light exertional level, with some additional limitations. (Tr. at 21) She could only occasionally stoop and crouch. *Id.* She could frequently handle, finger, and feel bilaterally. *Id.* She must avoid hazards, such as unprotected heights and dangerous machinery. *Id.*

The ALJ found, based on that RFC and the testimony from the Vocational Expert (VE), that Dr. Matthews could perform her past work as a telecommunicator supervisor.[2] (Tr. at 25) Thus, the ALJ determined that Dr. Matthews was not disabled. *Id.*

---

[2] Notably, the VE testified that there were no other jobs Dr. Matthews could perform other than the telecommunicator supervisor. (Tr. at 52)

III.  **Discussion:**

  A.  Standard of Review

  In this appeal, the Court must review the Commissioner's decision for legal error and assure that the decision is supported by substantial evidence on the record as a whole. *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (*citing Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). Stated another way, the decision must rest on enough evidence that "a reasonable mind would find it adequate to support [the Commissioner's] conclusion." *Halverson*, 600 F.3d at 929. The Court will not reverse the decision, however, solely because there is evidence to support a conclusion different from that reached by the Commissioner. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006).

  B.  Dr. Matthews's Arguments on Appeal

  Dr. Matthews maintains that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ should have found her mental impairments to be severe at step two; that the ALJ failed to give proper weight to treating and examining source medical opinions; that the ALJ should have further developed the record; and that she could not perform her past relevant work. Dr. Matthews's medical records include evidence of mental impairments that the ALJ did not adequately consider. Therefore, the remaining arguments for remand need not be discussed in detail.

  Dr. Matthews was born on May 13, 1956 and completed a doctorate in Christian ministry (leadership development.) (Tr. at 36-37) She had gastric bypass surgery in 2010 and lost 150 pounds. (Tr. at 462-465, 855, 890) Thereafter, she developed anorexia

because she was "afraid of getting fat again." (Tr. at 727-728) Her eating disorder was complicated by anxiety, panic attacks, severe depression, and drug and alcohol addiction. (Tr. at 856-857) When she tried to work as a professor during the relevant time-period, she suffered a stress-related heart attack and was hospitalized for five days. (Tr. at 660, 691-725)

Dr. Matthews was treated regularly by Keena Reddin, a licensed counselor. On May 8, 2017, Ms. Reddin found Dr. Matthews to be confused, agitated, combative and sad. (Tr. at 606-607) A week later, Dr. Matthews reported that she was better and had not used alcohol; but, Ms. Reddin believed that Dr. Matthews was not being truthful. (Tr. at 602-604)

On June 1, 2017, Dr. Matthews told Ms. Reddin that her depression was worsening. She diagnosed Dr. Matthews with alcohol addiction, major depressive disorder, and generalized anxiety disorder. (Tr. at 599-601) On June 22, 2017, Dr. Matthews reported that she was having manic periods two-to-three times per week and that she was not eating as she should. (Tr. at 769-770) Ms. Reddin prescribed an eating schedule. *Id.* Dr. Matthews improved in mid-2017, and Ms. Reddin urged her to stop all drug and alcohol use. (Tr. at 754-760)

On August 22, 2017, Dr. Matthews was irritable and anxious at a visit with Ms. Reddin. (Tr. at 751-752) Ms. Reddin diagnosed active anorexia "physically, mentally, and emotionally." (Tr. at 740-741) After returning to work teaching seminary classes in

September 2017, Dr. Matthews reported anxiety, panic attacks, and insomnia. (Tr. at 658-666) She was struggling to eat. *Id.*

On October 4, 2017, Dr. Kristin Brown, Ph.D., a neuropsychologist, evaluated Dr. Matthews, who reported that she smoked one joint of marijuana nightly to stimulate her appetite. (Tr. at 855-857). Dr. Matthews's attention and processing speed were weak. *Id.* Dr. Brown diagnosed untreated obstructive sleep apnea, moderate-to-severe psychiatric distress, untreated ADHD, poly-substance dependence/abuse, eating disorder (probable anorexia) and chronic physical pain. *Id.* Dr. Brown recommended individual psychotherapy and ***inpatient*** treatment for Dr. Matthews's eating disorder. *Id.*

On October 19, 2017, Dr. Matthews suffered a stress-related heart attack. (Tr. at 691-725) She stayed in the hospital for 5 days. (Tr. at 694)

In late 2017, Dr. Matthews reported problems eating, consistent with anorexia. (Tr. at 683-684) She was tearful and frustrated. (Tr. at 805-806) On February 14, 2018, Dr. Matthews told Ms. Reddin she was tired, frustrated, and depressed. (Tr. at 1110-1111). She had lost 20 pounds and was not getting out of the house unless absolutely necessary. *Id.* Ms. Reddin scheduled an appointment with her clinic's psychiatrist. *Id.*

Dr. Lillian Somner, a D.O. and a psychiatrist, saw Dr. Matthews on March 15, 2018. (Tr. at 1097-1099). Dr. Somner diagnosed anorexia, anxiety disorder, and major depressive disorder. *Id.* She opined that Dr. Matthews was "perhaps killing herself slowly due to malnourishment." *Id.*

Ms. Reddin filled out a medical source statement dated February 14, 2018. (Tr. at 897-899) She found "marked" limitations in basic mental work tasks, based upon her longitudinal treatment of Dr. Matthews. *Id.*

Two state-agency reviewing doctors submitted opinions (dated February 1, 2017 and May 30, 2017) well before Dr. Matthews's deterioration. (Tr. at 78, 112). Both doctors found that Dr. Matthews's mental impairments were non-severe. *Id.*

At step two of the analysis, the ALJ must determine whether a claimant has an impairment or combination of impairments that is "severe" and meets the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at §§ 404.1520(c); 416.920(c).

The ALJ did not discuss the opinion of Dr. Somner, who was Dr. Matthews's treating psychiatrist. She also failed to discuss the report from Dr. Brown, the neuropsychologist who recommended inpatient eating disorder treatment for Dr. Matthews. It is the ALJ's function to review all of the medical evidence and resolve conflicts among the various treating and examining physicians. *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007); *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

An ALJ must discuss the opinions of treating physicians. If those opinions are rejected, the ALJ must explain why. *Ingram v. Charter*, 107 F. 3d 598, 602 (8th Cir.

1997); *Prince v. Bowen*, 894 F.2d 283 (8th Cir. 1990). The ALJ **did** discuss Ms. Reddin's medical source statement and gave it some weight. (Tr. at 20) But the ALJ proceeded to give great weight to the two opinions of the non-examining state agency doctors. (Tr. at 19) In short, the ALJ failed to discuss the examining and treating opinions and, instead, relied upon the state-agency opinions rendered almost a year before the examining and treating opinions were issued. And she did give Ms. Reddin's report of marked limitations "some weight," which suggests that Dr. Matthews's mental impairments were severe at step two.

The ALJ reasoned that, because mental status examinations were occasionally normal for Dr. Matthews and because she could perform activities of daily living, she was not disabled. (Tr. at 18-19) The ALJ did not rule mental impairments severe at step two, however, and there is no evidence she considered them at all at steps three and four of her analysis. For example, the ALJ did not ask Dr. Matthews about her depression, anxiety, or eating disorder at the hearing, which indicates that she did not properly develop the record. And, the ALJ did not refer to any mental health records after her step-two analysis.

An ALJ has a basic duty to develop the record fully, even when the claimant is represented by counsel, and she must order a consultative examination if it is necessary to make an informed decision. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985). The ALJ "acts as an examiner charged with developing the facts." *Richardson v. Perales*, 402

U.S. 389, 410 (1971). Here, the examining and treating doctors' opinions directly contradicted the state-agency psychiatric opinions. At the very least, the ALJ should have ordered a mental consultative examination to assess Dr. Matthews's condition, particularly since her mental health deteriorated throughout the relevant time-period. The ALJ's failure to do so contributed to her error at step two, when she determined that mental impairments were non-severe.

**IV.**  <u>**Conclusion**</u>**:**

      The ALJ's decision is not supported by substantial evidence because the ALJ did not properly evaluate Dr. Matthews's mental impairments at step two. For that reason, the decision should be reversed, and the case should be remanded with instructions for further review.

      DATED this 22nd day of October, 2019.

_____
UNITED STATES MAGISTRATE JUDGE
